IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| Plaintiff | |
| v. | **Criminal No. 18-418 (DRD)** |
| **ALEX TORRES-MEJIAS,** | |
| Defendant. | |

**OPINION & ORDER**

Pending before the Court is Defendant Alex Torres-Mejias's *Motion to Dismiss Indictment Based on Government Misconduct. See* Docket No. 65. The United States filed its respective response in opposition thereto. *See* Docket No. 67. The Court referred this matter for Report and Recommendation to Honorable Camille L. Velez-Rive. *See* Docket No. 69. United States Magistrate Judge Camille L. Velez-Rive recused herself and pursuant to the Order of recusal, the Motion was assigned to Honorable Judge Bruce J. McGiverin. *See* Docket No. 72. Defendant filed a Reply (Docket No. 73), and the United States filed a Sur-Reply (Docket No. 77). On November 17, 2021, the United States of America filed a Superseding Indictment that eliminates the heroin-based charges as to Defendant Alex Torres-Mejias. *See* Docket No. 78. On November 23, 2021, the Magistrate issued a Report and Recommendation regarding the Defendant's *Motion to Dismiss*. *See* Docket No. 82.  Objections to the Report and Recommendation were due on December 7, 2021, and Defendant did not file objections. On December 14, 2021, Defendant filed a Motion Requesting Allowance of Tardy Appeal of Magistrate's Report and Recommendation. *See* Docket No. 87. On the same date, the Court entered the following order: "ORDER granting 87 Motion Requesting Order as to Alex G. Torres-Mejias (1). The Court is not persuaded by the Defendant's arguments as counsel has unlimited access to the CM/ECF filing system, but in the best interest of

justice, the Court will allow Defendant to file an untimely appeal by December 23, 2021. No further extensions of time will be granted. Signed by Judge Daniel R. Dominguez on 12/14/2021." *See*, Docket No. 88. On December 21, 2021, Defendant filed its Objections. *See*, Docket No. 89. On January 5, 2022, the Government filed its Response in Opposition to Defendant's Objection to the Report and Recommendation Denying Defendant's Motion to Dismiss Based on Misconduct. *See*, Docket No. 90.

Upon the Court's review of the Magistrate Judge's Report and Recommendations, the Court hereby **ADOPTS IN TOTO** the Report and Recommendations at Docket No. 82 as discussed herein.

**I. Factual Background**

As the Court finds that the factual background, as illustrated by the Magistrate Judge in his Report and Recommendation is accurate and consistent, the Court incorporates herein all factual background as discussed by the Magistrate Judge. *See* Docket No. 82 pp. 1-4.

> "In January 2018, Homeland Security Investigations ("HSI") began investigating Torres for a possible federal violation regarding the importation, distribution, and possession with intent to distribute controlled substances in Puerto Rico. Dkt. 3-1 at 1. HSI believed that Torres was searching for transportation in order to smuggle narcotics into Puerto Rico from Colombia and that he also planned to smuggle narcotics into the continental United States from Puerto Rico via commercial airline flights. *Id.*
>
> On May 2, 2018, HSI undercover agents met with Torres and discussed different strategies for smuggling narcotics into Puerto Rico and smuggling narcotics from Puerto Rico to the mainland United States. *Id.* On June 14, 2018, Torres called one of the HSI agents and arranged for the transportation of around two kilograms of cocaine from Puerto Rico to the continental United States via a commercial flight; Torres apparently believed that the agent was an airport employee. *Id*. at 1-2. They came up with a plan for the narcotics to be transported to the mainland on June 18, 2018. *Id.* at 2.
>
> On June 15, 2018, Torres met with the HSI agent and told him that he had brought approximately five kilograms of cocaine instead of just two. *Id.* Torres also indicated that he would have another fifteen kilograms of cocaine ready for the HSI agent to transport on a later flight. *Id.* Torres told the HSI agent to retrieve the narcotics from Torres's car. *Id.*

The HSI agent did so, removing a clear plastic bag with what appeared to be bedding inside. *Id.* HSI surveillance agents observing the meeting saw this occur. *Id.*

Subsequently, HSI agents inspected the bag and found that besides bedding, it contained four brick-shaped objects containing a white powdery substance and one additional object packaged somewhat differently and containing a substance of a somewhat different texture. *Id.* at 2-3. The five objects were field-tested by an HSI agent; the first four brick-shaped objects all reacted positively to the presence of cocaine, while the last (differently packaged) object allegedly reacted positively to the presence of heroin. *Id.* at 3. On June 18, 2018, Torres provided the HSI agent he had contacted with details for delivering the drugs to a contact in New York. *Id.*

On June 19, 2018, the government presented a criminal complaint, charging Torres with 1) conspiracy to distribute five kilograms or more of cocaine under 21 U.S.C. § 841 and 846; 2) possession with intent to distribute 500 grams or more of cocaine under 21 U.S.C. § 841; and 3) possession with intent to distribute 100 grams or more of heroin under 21 U.S.C. § 841. Dkt. 3. The affidavit supporting the complaint by HSI Special Agent Jose Turell attested to the facts summarized above, including that one of the objects seized field tested positive for heroin. Dkt. 3- 1. Torres was arrested on the criminal complaint and subsequently waived his right to a preliminary hearing. Dkts. 4, 6, 8, 9. A District of Puerto Rico magistrate judge approved the waiver and found probable cause as to the charges contained in the complaint. Dkt. 9.

On June 28, 2018, a grand jury sitting in the District of Puerto Rico indicted Torres on charges that he 1) conspired with others to possess with intent to distribute five kilograms or more of a substance containing cocaine and at least 100 grams of a substance containing heroin; 2) that he possessed with intent to distribute 500 grams or more of a substance containing cocaine; and 3) that he possessed with intent to distribute 100 grams or more of a substance containing heroin. Dkts. 12, 13.

On July 16, 2018, the government sent in the objects passed on by Torres for laboratory testing. Dkt. 65 at 4; Dkt. 67 at 3. On August 20, 2018, a lab report was issued reflecting that all of the objects seized tested positive for cocaine but that none of them tested positive for heroin. *Id.* The government has since acknowledged that although the HSI agents were able to seize a total of 4.9 kilograms of a substance containing cocaine from Torres, they did not actually seize any heroin from him. Dkt. 67 at 3-4. However, the government did not seek to reindict Torres on different charges or move to dismiss the heroin charge until November 17, 2021, after Torres moved to dismiss the original indictment. Dkts. 78, 79.

After the government received the results of the test, the government and Torres attempted to come to a plea agreement regarding the charges against Torres. Dkt. 67-4. In the proposed agreement, the government asked Torres to plead guilty to Count One of the indictment; the proposed agreement described the original Count One as a charge that Torres conspired with others to possess with intent to distribute five kilograms or more of a substance containing cocaine and at least 100 grams of a substance containing heroin. *Id.* However, the government only asked Torres to agree to plead guilty to what the

3

government described as the "lesser included" charge in Count One, that Torres conspired with others to possess with intent to distribute 500 grams or more of cocaine. *Id.* In the proposed agreement, the government also asked Torres to agree that for sentencing guideline purposes, he be held accountable for possession with intent to distribute at least five but less than fifteen kilograms of cocaine. *Id.* Torres has rejected the proposed plea agreement. Dkt. 67 at 4. Since Torres raised the motion at issue, the government has brought a superseding indictment against Torres that drops the heroin charge and removes all other references to heroin present in the original indictment. Dkt. 78."

## II. Standard of Review

The Court may refer dispositive motions to a United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Local Rule 159; *Matthews v. Weber*, 423 U.S. 261 (1976). Any party may contest the Magistrate Judge's report and recommendation by filing its objections. Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* "A party that files a timely objection is entitled to a de novo determination of 'those portions of the report or specified proposed findings or recommendations to which specific objection is made.' " *Sylva v. Culebra Dive Shop*, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005)(citing *United States v. Guzman-Batista*, 948 F. Supp. 2d 194, 196 (D.P.R. 2013).

"Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert denied*, 474 U.S. 1021 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *see Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir.

4

1994) (holding that objections are required when challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Borden v. Sec. of H.H.S.*, 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). Hence, the standard for review of an objected report and recommendation is *de novo* review of those matters properly objected. *See Borden v. Secretary of H.H.S.,* 836 F.2d at 6.

In order to accept unopposed portions of the Magistrate Judge's report and recommendation, the Court need only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n*, 79 F.3d 1415, 1419 (5th Cir. 1996) (*en banc*) (extending the deferential "plain error" standard of review to the legal conclusions of a magistrate judge that were not objected to); *see also Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982) (*en banc*) (appeal from district court's acceptance of a magistrate judge's findings that were not objected to was reviewed for "plain error"); *see also Nogueras-Cartagena v. United States*, 172 F.Supp. 2d 296, 305 (D.P.R. 2001) (finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous") (adopting the Advisory Committee note regarding Fed. R. Civ. P. 72(b)); *see also Garcia v. I.N.S.*, 733 F.Supp. 1554, 1555 (M.D.Pa. 1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

Thus, the Court shall conduct *de novo* review of the objected portions of the report and recommendation while using the aforementioned *plain error* standard for the portions that have not been objected to.

**III. The Defendant's Objections to the Magistrate Judge's Report and Recommendation**

Torres moved to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b), claiming that a government witness committed perjury at a probable cause hearing, that the government committed perjury by knowingly presenting false testimony to the grand jury at the indictment in the present matter, and that the government has violated his Fifth Amendment due process rights *See* Docket No. 65. Having reviewed the Magistrate Judge's Report and Recommendation *de novo* and the record of the instant case, the Court reaches the same conclusion as the Magistrate Judge.

The United States Constitution, Fourth Amendment provides that,

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S. Const. Amend. IV. "In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court established that a criminal defendant has a right to a hearing to attack, pursuant to the Fourth Amendment, the statements contained in an affidavit submitted in support of a request for a search warrant. A *Franks* hearing, therefore, 'is primarily a vehicle for challenging a warrant by impeaching the affiant.' ". *United States v. Guzman-Batista*, 948 F.Supp.2d. 194, 197 (D.P.R. 2013)(citing *United States v. Adams,* 305 F.3d 30, 36 n.1 (1st Cir. 2002).

Under *Franks,* "[a] defendant is entitled to a hearing to challenge the truthfulness of statements made in an affidavit supporting a search warrant if he makes a substantial preliminary showing that (1) a statement in the affidavit was knowingly and intentionally false, or made with reckless disregard of the truth, and (2) the falsehood was necessary to the finding of probable cause. *United States v. Strother,* 318 F.3d 64, 69 (1st Cir. 2003); *see Franks*, 438 U.S. at 171-172,

6

98 S.Ct. 2674. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156, 98 S. Ct. at 2676.

**A. The United States did not knowingly procure perjury before the grand jury**

In his R&R, the Magistrate Judge concluded, in pertinent part, the following: "Torres claims that the magistrate judge who found probable cause that Torres conspired to possess heroin relied upon a perjured affidavit. However, Torres makes no showing that any person involved in this matter has committed perjury. (R&R, Docket No. 82 at 6) Torres offers no explicit argument or support for the idea that because the laboratory test came back negative for heroin, I should presume that Agent Turell lied about the results. Torres does claim that the field test was never conducted at all, but in support of this claim, he only raises vague, unclear, and specious allegations regarding photos of the field test provided by the government. (R&R, Docket No. 82 at 7)."

In response to the Magistrate Judge's conclusion, Defendant continues to claim that his mere claim that the Government "fabricated" a field test in the present case is sufficient to support his allegation that false testimony was presented before the grand jury. *See* Docket No. 89 at 6. As stated by the Magistrate Judge, "[i]t is well-settled that perjury occurs when a witness testifies under oath or affirmation on a material matter with the willful intent to provide false testimony rather than as the result of confusion, mistake, or faulty memory. *See*, e.g., *United States v.*

7

*Dunnigan*, 507 U.S. 87, 94 (1993); 18 U.S.C.A. § 1621 (requiring for finding perjury that an individual behave willfully and actively believe that what they are claiming is not true)."[1]

None of the arguments presented by Defendant support that at the time of the filing of the original indictment in this case, the officer that testified before the grand jury knowingly provided false testimony. The fact that a laboratory test received after the return of the indictment provided that all items seized form Defendant contained cocaine, is insufficient to support a conclusion that the officer purposely lied before the grand jury. The conversations between Defendant and the undercover officer that received the controlled substances on June 15, 2018, summarized by Defendant in his Opposition (Docket No. 89 at 3), together with the positive field test for heroin, further support the conclusion that the investigate agency believed in good faith that one of the packages provided by the Defendant did contain heroin[2].

**B. No Fifth Amendment due process violation occurred with the filing of the original indictment**

In his R&R, the Magistrate Judge concluded, in pertinent part, the following: "Torres does not claim that the government failed to disclose any exculpatory evidence in this matter; indeed, it appears that the government promptly notified Torres once the government discovered that the object that tested positive for heroin in the field only tested positive for cocaine in the laboratory. Torres also points to no requirement that the government must reindict an individual if evidence arises after the initial indictment that exonerates the individual of one or more of the charges

---

[1] The First Circuit has determined that to constitute perjury, the defendant must have believed when he delivered his testimony that it was apocryphal. *United States v. Reveron Martinez*, 836 F.2d 684, 689 (1st Cir. 1988) (emphasis added); See *United States v. Bronston*, 453 F.2d 555, 560 (2d Cir. 1971), reversed on other grounds, 409 U.S. 352, 93 S. Ct. 595, 34 L. Ed. 2d 568 (1973) "[K]nowledge of the falsity of his statements at the time he gave them is essential to a perjury conviction under 18 U.S.C. § 1621." (emphasis added).

[2] The existence of a field test that yielded a positive result for heroin was information made available to Defendant since the filing of the complaint in the instant case on June 19, 2018.

against him if other charges (or lesser included charges) remain viable; such a requirement does not appear to exist. (R&R, Docket No. 82 at 9)."

In response to the Magistrate Judge's conclusion, Defendant insists in his Opposition that the United States "willfully brough false charges against him which were not supported by the evidence available to the government at the time of indictment" and that the recent superseding indictment does not cure said alleged due process violation. *See* Docket No. 89 at 13.

To dismiss an indictment for false testimony before a grand jury, a defendant must establish both: (a) that the testimony was false and (b) that the government knew the testimony was false. *United States v. Reyes– Echevarría*, 345 F.3d 1, 5 (1st Cir.2003). Defendant has failed to prove that the United States knew at the time of the return of the original indictment that the testimony provided by the officer was false, as correctly concluded by the magistrate judge in the R&R. See also *United States v. Munoz Franco*, 123 F. Supp. 2d 45, 53 (D.P.R. 2000) ("The First Circuit, as illustrated in these decisions, has made it clear that a submission showing objectively false testimony, but falling short of showing an intentional submission of false testimony, is insufficient to show a violation of a prosecutorial duty.").

There was no due process violation in presenting an indictment against the Defendant for the possession with intent to distribute heroin at the time based on the information in possession of the United States. At the time of the original indictment before the grand jury, the Government had good faith to believe that one of the five items handed by Defendant to the undercover officer was heroin because this item had a different color, look and shape than the other items, and this particular item field tested positive to heroin. *See* Docket No. 90 at 5.

On the same token, the decision of the United States to first engage in plea negotiations with the Defendant in order to reach a plea of guilty for conspiracy to possess with intent to

9

distribute cocaine, instead of immediately presenting a superseding indictment, did not constitute a Fifth Amendment due process violation either. Contrary to Defendant's contention, the immediate dismissal, or the prompt filing of a superseding indictment before engaging in plea negotiations was not mandatory in this case. In the instant case, there is no doubt that after the receipt of the laboratory test following the return of the original indictment, both parties became fully aware that that all items seized from Defendant contained cocaine and not heroin, and there is absolutely indication that the United States in this case intended to proceed to trial with the heroin charges. *See*, Docket No. 90.

On November 17, 2021, a grand jury returned a superseding indictment eliminating all references to heroin, following Defendant's rejection of the plea offer. Therefore, any potential prejudice has been cured. Taking into account the facts of the instant case, a Defendant who has been on conditions of release since June 25, 2018, and a case in which a trial date has never been set, the Court agrees that no due process violation occurred in the filing of the original indictment.

**C. No Fifth Amendment due process violation occurred during the plea negotiations process**

In his R&R, the Magistrate Judge concluded, in pertinent part, the following: "Torres next claims that the government violated his Fifth Amendment right to due process by asking in a proposed plea agreement that he plead guilty to distributing heroin. The government has not actually done this; while the proposed plea agreement asks Torres to plead guilty to Count One of the indictment, in practice the agreement only asks him to plead guilty to the lesser included charge of conspiring to possess with intent to distribute 500 grams or more of cocaine, not the full original charge that included the heroin allegations. Despite cursorily referencing the original charge in Count One, no part of the plea agreement ultimately asks Torres to plead guilty to heroin related charges. As a result, I recommend that this claim be denied. (R&R, Docket No. 82 at 8)."

Defendant insists that the Government "chose to continue with this heroin fallacy right to the heart of the Rule 11 proceedings where Mr. Torres would have had to admit that the was pleading guilty under count one for conspiring to possess with intent to distribute heroin". *See* Docket No. 89 at 8. Defendant continues to claim that the Government committed alleged prosecutorial misconduct by "proposing" a plea agreement that was never even signed by the parties. In fact, not even a motion for change of plea was filed, much less a change of plea hearing was held.

The United States emphasizes that the only plea offer provided to former defense counsel in this case only called for the Defendant to plead guilty to Count One, but particularly only to conspiracy to possess cocaine with intent to distribute cocaine. *See* Docket No. 90 at 8. The United states further points out to the fact that Defendant has not produced a single written communication between the parties where the United States requested Defendant to admit in a statement of facts that he conspired to distribute heroin as part of the agreement with the United States. *Id.* According to the United States, the proposal was always to admit to conspiracy to possess with intent to distribute cocaine. *Id.*

**D. The early disclosure of grand jury transcripts in support of the original indictment is not warranted**

In his R&R, the Magistrate Judge concluded, in pertinent part, the following: "Torres requests production of grand jury evidence pertaining to his indictment on heroin-related charges, alleging that he has a good-faith belief that the government only presented testimonial evidence to the grand jury and did not present the results of the field test; however, Torres provides no evidence in support of this belief. Again, Torres fails to explain why or how the government may have committed misconduct in this context. The evidence available to the government at the time

apparently suggested that Torres possessed heroin with the intent to distribute it, and despite there (arguably) being a valid question as to whether such evidence would be admissible at trial, field tests clearly can support a probable cause determination; in fact, in similar contexts probable cause has been found based on testimonial evidence alone without a field test being conducted at all. (R&R, Docket No. 82 at 7)."

While the Defendant argues that grand jury abuse occurred during the return of the original indictment, the United States makes reference to the affidavit which describes the evidence that led to the filing of the heroin charges filed in support of criminal complaint. *See* Docket No. 3 at 3; Docket No. 62 at 8. Since no justification has been made to support the early disclosure of the grand jury transcripts, Defendant's request is denied.

## IV. Conclusion

For the foregoing reasons, the Court hereby **ADOPTS IN TOTO** the Magistrate Judge's Report and Recommendation (Docket No. 82). Thus, the Court hereby **DENIES** Defendant Alex Torres-Mejias's *Motion to Dismiss Indictment Based on Government Misconduct. See* Docket No. 65.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on this 24th day of January 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge